Thank you, Your Honor. Good morning. Andrew Grossman for the appellant. I'd like to reserve three minutes for rebuttal. This case involves eight PTO rules that impose an annual paperwork burden on the public of eight million hours at a cost of 2.3 billion dollars. The parties agree that these rules solicit or obtain facts or opinions from patent applicants. The question is whether these rules contain collections of information subject to the Paperwork Reduction Act's pre-approval requirement. The answer is yes. These are precisely the kinds of information collections that Congress and OMB intended and understood would have to go through the pre-approval process so as to minimize paperwork burden. In fact, OMB has repeatedly determined that PTO rules collecting the same information are subject to the PRA and require approval. The district court held that these collections don't need pre-approval because they apply in the context of individual patent applications. And that's essentially what OMB argues on appeal. It is no exaggeration to say that this approach would hollow out the PRA. Every request for information by a federal agency seeks some kind of individualized response. That's why agencies ask for information. When you get a tax form from the IRS, the IRS wants information about your individual income. That's the point. It makes no sense to exempt generally applicable information requests just because the responses to them are individualized. Well, but I mean the difference between taxpayers for the most part and patent applicants is we all have an obligation to pay our taxes. With regard to people who want a patent, they apply for a patent and there are rules that govern what information they have to submit at various stages in order to get their patent, right? That's correct, your honor. Isn't that a big difference from just generally the IRS has the 1040 form and everybody has to fill it out as opposed to here if you want to amend your patent application, here's a rule that tells you how to do it. Well, two things, your honor. First of all, they do work the same in the sense that they actually fill out a 1040. There are regulations that when you fall within those regulations, when you fit that contingency, the regulations then say you have to submit an income tax form. The PRA doesn't distinguish between collections of information that apply to a subset of the public versus those that apply to the public at large. The question is, does it apply to 10 or more people? So, counsel, if we were back in your example of the tax circumstance, if you submit for a refund and the IRS tax examiner says to you like he or she says to everybody else in this same circumstance, you know, I need all your receipts. I ask that from everybody in order to process this refund claim. I need all of your receipts and I need all this other information. Is that request from the examiner to the taxpayer also subject to this? Because it seems to me that could be analogous to the rules that say the patent examiners want this particular information if you're seeking to amend your application. Well, your honor, I think the devil is in the details. So if the regulation for the refund in your hypothetical said that the receipts were required to be submitted, then in that instance what you would be talking about is an ad hoc follow up type question and so that would be subject to the exceptions. What we have here by contrast is a series of regulations that are freestanding regulations that solicit certain collections of information from patent applicants in particular circumstances. So if that's the kind of situation in your hypothetical where the IRS promulgated a regulation saying we're going to ask everybody for these receipts, then yes, that would generally require PRA approval. I think this is illustrated, for example, by PTO rules 130, 131, and 132. These rules solicit the submission of evidence through affidavits following a patent claim rejection. These rules apply generally to patent applicants. The rules aren't individualized requests or follow up questions or anything like that. If a patent applicant fits the specified circumstance of receiving a claim rejection, then the rules apply. Like I said, that's basically how it would work in the tax return circumstance. If you earn more than a certain amount, the regulations say you have to file a tax return. The fact that a request for information applies only in certain circumstances or to a particular class of people or that it demands an individualized response doesn't take it outside of the ambit of the PRA because if that's how it works, then the PRA would effectively be a dead ladder. I think that explains more broadly here why it is that the OMB has refused to give any interpretation of the two regulatory exceptions that it relies upon. Any interpretation that actually knocked out these kinds of information requests from the PRA would effectively nullify the preapproval requirement. Sensibly enough, that's not what the regulations do. The PRA requires preapproval for so-called collections of information. The regulations, that is OMB's regulations, define that term to include any kind of rule or regulation that solicits information or causes information to be obtained by an agency. The regulations also define the term information to mean any statement of fact or opinion. Then that definition is followed by a list of exceptions for things that aren't considered information for PRA purposes. The OMB is relying on two of these, numbers six and nine on the list. I want to make sure I understand your interpretation of number six. Your interpretation of number six is what this means is if there is a request sent out to the Bank of America for the Bank of America having made a request to its customer for some facts that this is seeking, this applies to exempt that circumstance where it's a request for a request. Yes, your honor. I mean, how, why would that make any sense? Why would there be an exception for something like that as opposed to what strikes me as a far more normal reading of this? If you send out to a particular person, one single person, a request for their facts or opinion, how does your reading of this make any logical sense? Why would anybody have an exception to cover that? Sure. We'll start with the policy and then go to the text. In terms of policy, why that would make sense, I don't think that you would see from an agency a request for a request. I think what you would be more likely to see would be a general disclosure requirement for requests. It's not so much that you would see, say, for example, a financial regulator saying, send me this request. You would have a broadly applicable disclosure requirement as you actually see in things like know your customer programs. And you also see in a circumstance with I think pretty recent salience, drug testing that is overseen in some measure by the FDA. There are requests made to, from companies that are undertaking drug development and testing of drugs like vaccines. And in many instances, the FDA wants to know what kinds of requests are being made by those companies. So you can have a general disclosure requirement there. So it's not like this is a null set or anything like that. It's a kind of circumstance where you might expect a wide variety of collections. But at the same time, you could certainly understand why the substance of those types of requests might not be the kind of thing that would have to go the preapproval process. I'll let you get in a minute, obviously, to your argument about the statute. But I still have to say that doesn't make any sense to me. I mean, it doesn't make any sense to me that you would have a separate exception for requests, essentially for requests, as opposed to what strikes me as a more straightforward reading of this, which is if you're sending a request to a single person for their facts and opinion, it's not covered because we're dealing with basically much larger, much more generally applicable things. And if somebody is just dealing with a single person and their facts or opinion, it's just not going to be covered by requiring them to get an OMB number every time. Well, your honor, if what the scope of it, then the exception would be entirely superfluous, because the definition of collection of information already knocks out the collections of collections that are addressed to fewer than 10 people and the statute does as well. So there would be no need whatsoever for this. And indeed, I have on occasion seen provisions of statutes where there might be no need for them, but they still have some meaning. And I mean, it strikes me as number six is more along the lines of an example of something that's accepted, even if technically it might not be needed. So I would also go, your honor, to the text. Exception six is an exception from the definition of information. It's not an exception from the definition of collections of information. So the question is, is the item that is in the listed exception, is that what's being collected? And there's simply no way to read the phrase, a request for facts or opinions to reach information obtained in response to such a request. Every other exception here pretty much is written in the way to reach certain facts or opinions obtained in various ways. This exception isn't. It omits that language. If we find that your interpretation of exemption six has some textual support, but it really doesn't make sense, as Judge Bennett points out, it just doesn't seem to be really the intent of it. While the government's interpretation may arguably create some, as you It's at least ambiguous, right? And so if we conclude that it's at least ambiguous because you have some textual support, but yet the government also has compelling arguments, then why doesn't the agent get all the deference in this case? Well, two things, your honor. What level of deference would apply? Well, first of all, your honor, the agency has never identified any ambiguity in this. It's never claimed that the text was ambiguous at all. And the district court, in fact, noted that specifically. But we went anyway, even if you accept the government's view that this reaches information obtained in response to such requests, because these are generally applicable rules and regulations. None of them are addressed to a single person. In fact, OMB's regulations specifically deem generally applicable rules like this one, like these ones, to be addressed to 10 or more persons. And that's sort of what you would expect. If an agency is put a collection of information in a notice and comment rule and publish it in the Federal Register and make it generally applicable, that's the sort of thing that you would expect to be covered by the Paperwork Reduction Act. And indeed, OMB did. Or you could just look at the rules at issue here themselves, and you can see that none of them are addressed to a single person. For example, Rule 111 generally solicits argumentation and claim amendments following a non-final office action. Nothing in the rule is addressed to a single person. Instead, like single one of these rules, it applies generally to patent applicants. And so if you were to interpret Exception 6 to reach that kind of generally applicable rule, it would similarly knock out of the PRA practically any kind of disclosure requirement. And I think it's very telling and very concerning that OMB refuses to actually draw any kind of line for when this applies and when it doesn't apply. And I think that sort of puts the proof to the fact that the agency's interpretation here simply doesn't get to where it wants to go. If I could briefly address Exception 9, the agency also refuses to interpret that. That exception deals with sort of ad hoc, non-standardized follow-up questions that clarify responses to approved collections. But the main problem here is that none of these PTO rules involve non-standardized follow-up questions. Again, you can look to Rule 111 or the affidavit rules that I mentioned earlier, 130 through 132. These rules generally solicit certain information from patent applicants in particular circumstances. There are no follow-up questions, there's nothing that's non-standardized, and there's nothing that's being clarified. The same rules with the same collections of information apply to every applicant. If the Court has no further questions at this time, I would reserve the balance of my time for this question. And this may be neither here nor there with regard to the statutory construction argument, but would a ruling in your favor in any way progress the science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries? No, Your Honor. A ruling in our favor, first of all, a ruling in our favor would result in a remanded vacatur to OMB, which would then have to move forward. If the OMB ultimately agreed with us that responses are not required in response to these collections, applicants, if they so chose, would still be able to provide information to PTO. They just wouldn't necessarily be governed by the specific strictures of these particular rules. The OMB has in its implementing regulations a variety of ways of fast-tracking approval decisions, and one presumes that if there were any kind of concern about the patent system that OMB would do that. I think it speaks volumes that over the four years of this litigation, OMB and PTO don't appear, so far as I'm aware, to have moved forward on an emergency basis or taken steps to protect against the potential contingency of an adverse decision. Thank you, Your Honor. I'll put a couple of minutes back on the clock for you for rebuttal. Good morning, Your Honor. Jennifer Utrecht on behalf of the government. As discussed, the question in this case is whether the challenged USPTO rules authorize the agency to engage in a collection of information for which it doesn't have OMB approval. The rules at issue here are procedural rules that govern the course of the patent examination process. Of course, there are two broad categories of information that's collected by the USPTO. The first is all of the information that is required to be disclosed to the USPTO by statute and regulation as part of an initial patent application to show entitlement to a patent. Your written descriptions, your claims, everything that statutes or regulations say, every patent applicant must provide. There's no dispute that because there is specific documentation that are required by those rules that patent applicants provide that those rules, which are not at issue here, are certainly collections of information. What's at issue here are rules that govern what happens next. What happens in the patent application process? Well, an examiner looks at a person's patent. It identifies potential deficiencies. If the examiner doesn't find any deficiencies, he grants the patent. If it does find deficiencies, it sends an office action to the patent applicant explaining all of the deficiencies. What these rules do is they set time limits for when a patent applicant, how a patent applicant can respond to that communication by an examiner. Council, you know, I have a little bit of difficulty with your argument as to some of the rules. Like take, for example, rule 130, where it basically says when anything under re-examination is rejected, this is exactly what you have to submit. So I have difficulty seeing how that, for example, would be covered by exception six. So explain to me, for example, what your position is with regard to rule 130. Well, so with respect to rule 130, there are two, for each exception, I think, you know, the logics differ slightly. So we'll start with exception six. Rule 130 says that if your patent application is denied by an examiner because it is anticipated by prior art, right, then you need this affidavit that explains why that's not true. And so the rule itself contemplates that nothing is going to be submitted, no information is solicited or obtained until a particular individual receives a communication by an examiner. There's a request with a single person saying, I have examined your patent application for, let's say, a wind turbine, and I see there is prior art, there's a textbook from, you know, the 1940s that describes what I think your invention is. Please explain, you know, the various ways in which that's not true. And so anything that's being submitted is in response to that single, unique question that's sent to that single patent applicant. Although in this case, it's everybody who's rejected who wants to get unrejected has to do exactly what's in rule 130, right? So, yes, your honor. So how is that different, for example, from if I want to get a foreign tax credit from the IRS, which I don't have to do, here's the form that I have to put in that has exactly what I need to get the foreign tax credit. I think the better hypothetical with respect to the tax, you know, the better analogy to the tax hypothetical would be if the rule said, if and when someone from the IRS contacts you and says, I see deficiencies in your form, you know, you are permitted to submit the following types of things that have to be tailored to whatever it is that the IRS person has set. And because there's that hook there, what it is that you need to disclose depends upon what the inquiry is, the question that's being posed to you or the rejection that's being posed by the examiner. But I mean, that's the case with almost anything. It's not what you have to disclose so much as what the question is. And to get the foreign tax credit, I and everybody else who wants it, if it's over a certain amount, has to fill in this form and to get unrejected, the rejected applicant and everybody else who wants to be unrejected has to provide this precise information, even though the information they're providing maybe is going to be different from inventor to inventor, just like the tax credit, I might want my info is going to be different from my neighbor who wants the tax credit. Your Honor, what you're explaining is that the information you would provide is different. But what I'm saying is that the question that's posed is different. The thing that you are getting rejected for is going to vary from applicant to applicant, from applicant to applicant, they are going to say, I see this deficiency, there's this particular prior art. And that's unique to you. That's a request that's addressed only to you that no one else is going to have, there's not going to, unless you filed that exact application for wind turbine, an examiner is not going to send a question of, please explain this prior art that predates your wind turbine to anyone else. And even if, Your Honor, you're not convinced by that, exception nine still applies. And the reason for that is because there is a, as an initial matter, there's a broad OMB approved collection of information for USPTO to collect all of the whether someone is entitled to a patent under the statutes and regulations. And so that's that, the initial patent application collection. And if an examiner says, I don't think you're entitled to a patent because there is, your patent isn't novel. I see this piece of prior art that predates your application. Please explain why you're nevertheless entitled. That is following up on collection information that OMB has already given USPTO permission to collect. It's following up on How do you respond, counsel? How do you respond to Mr. Grossman's argument that OMB's reading creates a redundancy or spoofers problem, given that the regulations already limit collections of information, information involving more than 10 people. So how do we avoid or address that redundancy? I think it's important, even if Your Honor thinks there's some redundancy, I think the point is that the OMB regulations were designed to make abundantly clear. And it says this in the preamble to the regulations, that if a government asks a particular person for information based on their particular circumstances, that's not a collection of information. And the list of examples, sorry, the list exceptions from the definition of information are examples of the types, kinds of ways in which that would happen. And so the whole reason for having perhaps some exceptions that may overlap is just to make this abundantly clear and avoid fights like this one. So again, the regulations here, they set forth procedural rules, and the rules may contemplate that examiners are going to have individual communications with patent examiners, patent applicants, and that those communications may ultimately result in certain types of information being provided. But it's not until that single communication happens that is addressed to a single person based on unique questions that are being asked or unique office actions that are being sent that any information is being offered under these rules. Counselor, there's a couple arguments made by Appellate I would like you to respond to. One is he seemed to infer that rules very much like this from other agencies have been disallowed by OMB. At least that was the idea I got. But secondly, the idea that if the rules didn't exist, the patent office could still request all this information anyway. Is that true? So I will start with the latter because these are not simple answers. So if these rules didn't exist, then yes, a patent examiner would still need to tell patent applicants, here are the reasons why I'm rejecting your application. And a person may want to provide information in response to that. That doesn't help Mr. Hyatt's position though, because no one would think that that is a examiner were to just call someone and say, here's why you don't get a patent. You have 30 days to respond to this or we're going to declare your patent abandoned. And so having a rule that standardizes that and says patent that says very clearly and provides certainty patent examiners may call people and have that conversation with them. And there is a standard timeline for all people to respond. You know, that's not changing the fact that that single communication following up on the initial patent application is not a collection of information. What, you know, there would of course be confusion if we thought that these rules were invalid as to what the procedural consequences could be for failing to respond. Because of course, these are USPTO rules that have been in existence for a very long time. There have been many determinations of abandonment based on the fact that people don't respond to these communications. And you know, that is out there in the ether. And so in the absence of those rules, I think there would be a lot of litigation about what the consequences of not having those rules is. But in response to your honor's first question, which I believe you asked that counsel or what's different about about these rules and then others that the OMB have found to be in violation. So I don't think that counsel for Mr. Hyatt identified any reason which OMB has in fact said that they are what you disagree that you disagree that this ruling by OMB in this case is inconsistent with other rulings. We do. And even to the extent that there were was some inconsistency. You know, what Mr. Hyatt has identified is essentially the equivalent of drive by jurisdictional rulings by OMB. They've approved broad collections of information that have many rules inside of a list of regulations inside of a collection. And Mr. Hyatt has pointed to, you know, two or three within this long document and said, well, you approved the whole document. So what those things look like this thing. But it's not the case that he can't point to any time where OMB has clearly made careful consideration of any particular regulation and said something that's inconsistent with what they said here. Your Honor, if there's no further questions, I would make, I would ask that you affirm the decision of the district court. It doesn't appear that we have any questions. All right, let's put two minutes on the clock. Thank you, Your Honor. I'd like to address three points if I could. First is the relevance of PTO office actions. Five or six of these rules at issue here contain requests for information from applicants who have received an office action. PTO's regulation defining what office actions are states that an office action does two things. It notifies the applicant of the action and it provides, and I quote, reasons for any adverse action. An office action doesn't make any kind of request for information or anything like that. The requests here are in the rules. They're not in the office action. And I think a good analogy, an office action rejecting claims, it's a lot like a district court's order granting a motion to dismiss under Rule 1286. The order will explain why the legal claims are dismissed, but it isn't requesting anything. The plaintiff can try to overcome it, maybe through an amendment or maybe through appealing, but those options come from the rules of procedure, not from the order dismissing the case. And it works just like that with the PTO office action. A second point, OMB, in fact, has repeatedly ruled that PTO rules that collect the same information as these rules here are collections of information that require pre-approval. For example, OMB has approved a PTO rule for submissions of evidence or claim amendments after an administrative appeal has been filed. This rule collects the exact same The only difference is timing. The same is true of the reply brief regulation that OMB has approved. It collects the same information as Rule 111, just at a later time. OMB has no explanation for why it went one way with those rules and then a different way with the rules here. And the fact that it can't answer that question in terms of the regulatory exceptions that are at issue here simply confirms that its application of those exceptions is not defensible. And then finally, with respect to the remedy here, if we win on everything, the remedy here doesn't actually strike down the rules. Under 44 U.S.C. 3517, which is what we're suing under, the result would be simply that applicants couldn't be penalized for not complying with the letter of those regulations until they are approved. So there wouldn't be chaos or anything like that. It's something potentially that the OMB and PTO could correct through properly going through the approval process. Thank you, Your Reverse. Thank you very much, counsel. Both sides of your argument, interesting issues raised in this case. The matter is submitted and the court will issue a decision in due course. So that completes the argument calendar for today. We'll be recessing until tomorrow morning.
judges: Nguyen, Harpool, Bennett